KIRKLAND & ELLIS
CHRISTOPHER W. KEEGAN (SB#232045)
christopher.keegan@kirkland.com
STEPHEN M. SILVA (SB#335865)
stephen.silva@kirkland.com
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500

KIRKLAND & ELLIS LLP
AARON H. MARKS (*Pro Hac Vice Forthcoming*)
Aaron.marks@kirkland.com
AMAL EL BAKHAR (*Pro Hac Vice Forthcoming*)
Amal.elbakhar@kirkland.com
601 Lexington Avenue
New York, NY 10022
United States
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900

Attorneys for Plaintiff Mobileum Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Mobileum Inc., | CASE NO. 23-cv-1413 |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT AND FRAUD** |
| v. | **DEMAND FOR JURY TRIAL** |
| Kibott SARL., Olaf Funke and Celine Dellis, | |
| Defendants. | |

Plaintiff Mobileum Inc. ("Mobileum"), by and through its counsel of record, hereby files this Complaint for breach of contract and fraud seeking monetary relief against Defendants Kibott SARL ("Kibott"), Céline Dellis ("Dellis") and Olaf Funke ("Funke," and collectively with Kibott and Dellis, "Defendants"), and alleges as follows:

## PARTIES

1.      Plaintiff Mobileum is a Delaware corporation with its principal place of business at 20813 Stevens Creek Blvd., Suite 200, Cupertino, California 95014.  Founded in 2000, Mobileum is a leading global software provider of analytics-driven solutions for service providers in the telecommunications industry.

2.      Upon information and belief, Defendant Kibott is a private limited liability company established in Luxembourg, registered in the Luxembourg Trade and Companies Register, under number B 262.746, and with offices at 6, rue Neuve, L-7239 Bereldange, Lembboug.  Kibott describes itself as a professional services organization specializing in technology, strategy, relationship management and product development.

3.      Upon information and belief, Defendant Dellis is a resident of Luxembourg and acts as an agent, employee and representative of Kibott, and holds the title of Managing Director and Administrative Director (*gérant administratif*) of Kibott.

4.      Upon information and belief, Defendant Funke is a resident of Luxembourg and acts as an agent, employee and representative of Kibott, and holds the title of Technical Director (*gérant technique*) of Kibott.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy, excluding costs, interest, and any attorney's fees, exceeds $75,000.

6.      This Court has personal jurisdiction over Kibott under Section 27 of the Framework Services Agreement executed by Kibott and Mobileum (Exhibit A hereto), which provides that "[e]ach party hereto expressly consents to personal jurisdiction and venue in Alameda County in the State of California or by the United States District Court of the Northern District of California."

7.     This Court has personal jurisdiction over Dellis because Dellis signed the Framework Services Agreement, which contemplated a series of transactions whereby Mobileum would provide goods and services from California.  Moreover, Dellis sent communications to Plaintiff in California that contained fraudulent misrepresentations and caused injury in California.

8.     This Court has personal jurisdiction over Funke because Funke sent communications containing fraudulent misrepresentations intended to be received and cause injury in California and otherwise collaborated with Dellis in sending communications to Plaintiff in California that contained fraudulent misrepresentations and caused injury in California.

9.     Venue properly lies with this Court because Section 27 of the Framework Services Agreement provides that any dispute arising under the Framework Services Agreement "shall be adjudicated in Alameda County in the State of California or by the United States District Court of the Northern District of California."  (Ex. A.)

## FACTUAL ALLEGATIONS

### I.     BACKGROUND: MOBILEUM AND KIBOTT

10.     Mobileum is a leading global software provider of critical solutions that allow communications service providers to manage increasingly complex networks.  Mobileum serves a diversified, blue-chip customer base, including 35 of 36 of the global Tier 1 telecommunications companies and 70% of the Tier 2 telecommunications companies in over 190 countries.  Mobileum's innovative suite of applications provides customers with analytics-driven solutions for roaming and network services, network security, risk management, connectivity testing, and subscriber intelligence. Mobileum offers several different products, including big data platforms intended to provide solutions for communication service providers that need to process and sift through complex and voluminous data.

11.     More than 900 operator customers rely on Mobileum's platforms and services to increase roaming revenues, to improve network security, minimize risk and ensure active testing and monitoring. With a strong record of innovation, Mobileum is recognized for its ability to extract network and customer insights and to convert them into real-time actions that increase revenue, improve customer experience, and reduce costs.

12.     One of Mobileum's highly innovative and immensely successful broad active intelligence platforms is RAID, a leading data analytics and AI-driven platform (the "RAID Platform").  Mobileum's RAID Platform uses real-time data ingestion and processing to improve risk mitigation efforts.  Many companies, throughout the world, use and rely on Mobileum's RAID Platform.  These customer companies generally rely upon the RAID Platform for revenue assurance, enabling a communications service provider to accurately capture revenue for all services provided.  Customers appreciate the RAID Platform's out-of-the-box functionality and scalability for growth.

13.     In or about 2017, Mobileum began a relationship with Peter McNamara ("McNamara"), the Founder and Managing Director of a Germany-based, self-described software development company named Faveru GmbH.  As part of this relationship, McNamara provided various services, including consulting services specifically for the European market, for the Mobileum RAID Platform.

14.     In November 2019, McNamara introduced Mobileum leadership to Kibott at a meeting in Cologne, Germany.  McNamara's contact at Kibott was Funke, who was involved with McNamara on other projects and/or ventures, including working with Syniverse, a U.S. based telecommunications company that has partnered with Mobileum.

15.     Funke and McNamara represented that Kibott was a start-up technology company that sought to design specific use cases for software in response to customer demands, particularly in the hotel industry.  Kibott expressed interest in licensing Mobileum's RAID Platform to avoid the timely process of developing its own software as a service ("SaaS") platform.  Based on representations by McNamara, Funke, and Dellis about Kibott's business plan, credit-worthiness, and commitment to meeting its customers' and potential customers' needs, Mobileum agreed to meet with Kibott and its representatives to pursue a business relationship.

16.     McNamara and Kibott continued to meet with Mobileum leadership to discuss a potential business relationship throughout 2020, next meeting again in Cologne in February 2020, and thereafter meeting virtually due to the onset of the COVID-19 epidemic.  During these regularly occurring meetings, Mobileum presented the functionalities and capabilities of its RAID Platform and related training, support, and placement services.

17.     During these meetings in 2019 and 2020, Kibott told Mobileum that it wanted ████. According to Kibott, ████████████████████████ ████████████████████████████ ████████████████████ Kibott told Mobileum that it had already ████████████████████████ ████████████████████████

## II.     MOBILEUM AND KIBOTT ENTER INTO THE AGREEMENTS

18.     Between June 2021 and June 2022, Mobileum and Kibott entered into a series of agreements that would govern the nature of goods and services that Mobileum would render to Kibott and the timing and amount of payments that Kibott would render to Mobileum.

### A.     The Framework Services Agreement

19.     In June 2021, Mobileum and Kibott entered into the Framework Services Agreement. (Ex. A.)  Under the Framework Services Agreement, ████████████████████ ████████████████████████████ ████████████████ (Ex. A.)  Dellis and Andrew Warner, Mobileum's Chief Financial Officer, signed the Framework Services Agreement on behalf of Kibott and Mobileum, respectfully.

20.     The Framework Services Agreement became effective as of July 1, 2021 and would continue for a term of 12 months with automatic renewals for one consecutive year unless either party terminates.  (Ex. A, Sec. 2.1.)  From July 1, 2021 until late 2022 (the "Relevant Period"), neither party terminated the Framework Services Agreement.

21.     The Framework Services Agreement contains a number of clauses designed to preserve Mobileum and Kibott's respective property and confidentiality rights:

(i)     ████████████████████████ ████████████████ (Ex. A, Sec. 10.1.)

(ii)     ███ ████ ████ █ ████ ████ ████ ████████████████████████

1   ████████████████████████████████████████████████
2   ████████████████████████████████████████████████
3   ████████████████████████████████ (Ex. A, Sec. 10.3.)
4   (iii) ██████████████████████████████████████████
5   ████████████████████████████████████████████████
6   ████████████████████████████████████████████████
7   ████████ (Ex. A, Sec. 10.5.)
8   (iv) ███████████████████████████████████████████
9   ████████████████████████████████████████████████
10  █████████ (Ex. A, Sec. 12.4.)
11  (v) ████████████████████████████████████████████
12  ████████████████████████████████████████████████
13  █████ (Ex. A, Sec. 12.5.)

14      22.    Mobileum and Kibott structured the Framework Services Agreement such that Mobileum's

15  ████████████████████████████████████████████████
16  ██████████████ (Ex. A, Sec. 3.) ██████████████████
17  ████████████████████████████ (Ex. A., Sec. 3.2.) ████████
18  ███████████████████████████████████████████ (Ex. A, Sec. 4.)
19  ███████████████████████████████████████████ (Ex. A, Sec. 5.)

20      23.  ███████████████████████████████████
21  ████████████████████████████████████████████████
22  (Ex. A, Sec. 9.1.) ████████████████████████████████
23  ████████████████████████████████████████████████
24  ████████████████████████████████████████████████
25  ████████████████████ (Ex. A, Sec. 9.1.)

26      24.  ███████████████████████████████████
27  ████████████████████████████████████████████████
28



██████████████████████████████████████████████████████████

██████████████████████████████████████████. (*Id.*)

**B.**   **Initial Statement of Work**

25.   The Framework Services Agreement itself included a Statement of Work (the "Initial Statement of Work"), appended to the end of the Agreement as "Attachment A: Statement of Schedule of Work," ████████████████████████████████████████████. (Ex. A, Attachment A.)  Dellis signed each page of the Initial Statement of Work.

26.   Relevantly, the Initial Statement of Work states that ████████████████████████████████████████████████████████ (*Id.*)███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(Ex. A, Attachment A.)

27.   ████████████████████████████████████████████████

████████████████████████████████ (*Id.*) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.*) ██████████

██████████████████████ (*Id.*)

**C.**   **Second Statement of Work**

28.   Between August and September 2021, Kibott, ████████████████████

████████████████████████████████████████████████████████

████████████████████████. On September 10, 2021, before Mobileum had sent any invoices to Kibott, Mobileum and Kibott entered into "Attachment B: Statement of Schedule of Work 2" (the "Second Statement of Work," Exhibit B hereto). ████████████████████████████

██████████████████████. Dellis again signed each page of the Second Statement of Work.

29.   The Second Statement of Work includes ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

1   ███████████████████████████████████████████

2   ██████████████████████████████████ (Ex. B.) █████████████

3   ███████████████████████████████████████████

4   ███████████████████████████████████████████

5   ████████████████████████████ (*Id.*)

6   30.   ███████████████████████████████████████

7   ███████████████████████████████████████████

8   ███████████████████████████████████████████

9   ███████████████████████████████████████████

10  ███████████████████████████████████████████

11  ████████████████████████████████████████ (Ex. B.)

12  31.   The Second Statement of Work also ███████████████████

13  ███████████████████████████ (*Id.*) ████████████████████

14  ███████████████████████████████████████████

15  ███████████████████████████████████████████

16  ███████████████████████████████ (Ex. B.)

17  32.   Between October 5, 2021 and March 23, 2022, Mobileum and Kibott entered into

18  three amendments to the Second Statement of Work following conversations between the two parties.

19  Dellis also signed each of these amendments.

20  33.   Amendment No. 1 to the Second Statement of Work—signed on October 5, 2021 and

21  retroactively effective as of September 10, 2021—████████████████████████████

22  ████████████████████████ Amendment No. 2 to the Second Statement of

23  Work—signed on November 1, 2021 and also retroactively effective as of September 10, 2021—█████

24  ███████████████████████████████████████████

25  ███████████████████ Amendment No. 3 to the Second Statement of Work—signed

26  on March 23, 2022 and retroactively effective September 10, 2021—█████████████████████

27  ███████████████████████████████████████████

28

1    ██████████████████████████████.  Amendment No. 3 is the operative amendment for the

2    Second Statement of Work (Exhibit C hereto).

3        **D.    Third Statement of Work**

4        34.    After almost a year of collaboration, on June 25, 2022, Mobileum and Kibott entered into

5    a third statement of work that ████████████████████████████████ (the "Third

6    Statement of Work") (Exhibit D hereto).  The Third Statement of Work ████████████████

7    ████████████████ Dellis also signed the Third Statement of Work.

8        35.    The Third Statement of Work ██████████████████████████████████

9    ████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████  (Ex. D.)  The Third Statement of Work described a ████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████  (*Id.*)

16       36.    The Third Statement of Work also ████████████████████████████████

17   ████████████████████████████████████████  (*Id.*).  ████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████

20   ████████████████████████████████  (Ex. D.)

                            *        *        *

21
22       37.    Each Statement of Work provided that, ████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

     (Ex. A, Sec. 9.1; 9.6.)

26
27       38.    Under these collective agreements (the "Agreements"), ████████████████

28   ████████████████████████████████████████████████████████████████

1   ████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████

3   █████████████████████████████████████████████████.

### III.   MOBILEUM PERFORMS UNDER THE AGREEMENTS

#### A.   Mobileum Provides Goods and Services to Kibott and Its Customers

39.   Mobileum began providing Kibott ██████████████████████████ ███████████████████████████████████████████ ██████████████████████████ Mobileum dedicated significant resources—including the provision of staffing, which, at times, included more than ten Mobileum personnel, who spent approximately 1,000 hours providing support and services for Kibott—to assist Kibott ████████████████ ██████.

40.   Between October 2021 and December 2021, Mobileum and Kibott held weekly meetings to discuss the services being provided under the Agreements.   The meetings were ████████ ██████████████████████████████████. In that timeframe, Mobileum provided Kibott with the agreed-to services.

41.   Between January 2022 and March 2022, Mobileum and Kibott held meetings to address new developments and questions that Kibott had as its use case evolved.  At those meetings, Mobileum and Kibott strategized and outlined next steps.  For example, on February 25, 2022, Thomas Hofhammer of Faveru sent an email to Mobileum Services Delivery Director Hythem Mohamed El Rakaybe, Dellis and Olaf, among others, regarding the "weekly wrap up" that contained a presentation outlining next steps for the upcoming "sprints." ████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ According to the presentation, Mobileum, Faveru and Olaf planned a follow-up call with others on Wednesday, March 2, 2022.

42.   Between April 2022 and May 2022, Mobileum and Kibott held further meetings regarding ████████████████████████████████████████████ Prior to this time, Mobileum had already ████████████████████████████ and had held several meetings with Kibott

during which Kibott expressed its satisfaction with the goods and services that Mobileum had provided under the Agreements.

43.    Mobileum also provided goods and services ███████████████    For example, between June and November 2022, ███████████████████████████████████████ ██████████████████████████████████████████.

44.    ████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████.

45.    Kibott did not open any problem reports or issue any complaint letter regarding Mobileum's products throughout the Relevant Period.  Nor did Kibott express any dissatisfaction with Mobileum's services during that time.  Kibott had Mobileum's full support team available, and, █████ ███████████████████████████████████████████████████ █████████████████████.

**B.    Mobileum Issues the Invoices**

46.    Between September 2021 and July 2022, Mobileum rendered 25 separate invoices to Kibott for services rendered under the Agreements.  Mobileum gave Kibott fairly long payment deadlines, given that Kibott was ████████████████████████████████████.

47.    Mobileum sought Kibott's confirmation on the invoice schedules and the appropriate amount to be invoiced prior to rendering the invoices.  Kibott, by and through its email address "invoice@kibott.com," confirmed the schedules and amounts for the invoices.  Upon information and belief, Dellis sent all emails from the invoice@kibott.com email account, as described below:

(i)    On September 20, 2021, Mobileum emailed Kibott and McNamara to confirm the amounts of its first three invoices under the first two Statements of Work.  The invoices covered work performed in August and September 2021 and totaled €208,000.  Dellis emailed Mobileum and approved those amounts the same day.  On September 27, 2021, Mobileum sent Kibott two bills to invoice this amount.

Dellis emailed Mobileum and acknowledged the invoices without additional comment.

(ii)   On November 1, 2021, Mobileum issued its fourth invoice to Kibott, which covered usage fees for October 2021 and totaled €4,000.  Dellis acknowledged receipt of the invoice on November 2, 2021.

(iii)   On December 22, 2021, Mobileum emailed Kibott concerning a schedule of seven additional invoices it intended to issue for services that Mobileum would render pursuant to Amendment No. 2 to the Second Statement of Work.  The email indicated that the invoices were for a ███████████████████████ ████████ and covered milestones between January 2022 and July 2022.  The email described when the invoices would be due and the amount due for each.  Dellis responded with her **"*formal approval*"** of the due dates and amounts to be invoiced, noting that she had discussed the schedule with McNamara.  Mobileum sent Kibott each of those invoices on December 24, 2021.  Dellis responded that the invoices had been "received."  Those invoices totaled €1,800,000.

(iv)   On February 16, 2022, Mobileum emailed Kibott concerning the schedule for the August 2022 milestone under Amendment No. 2 to the Second Statement of Work, which totaled €1,000,000.  Dellis responded that she "agreed" to the schedule and told Mobileum to "proceed."  Mobileum issued the invoice to Kibott on February 17, 2022.

(v)   On March 13, 2022, Mobileum emailed Kibott concerning the schedule for the September 2022 milestone under Amendment No. 2 to the Second Statement of Work, totaling €1,000,000.  On March 14, 2022, Dellis responded that the schedule was "ok" and told Mobileum to "proceed."  Mobileum issued this invoice to Kibott on March 14, 2022.

(vi)   On May 26, 2022, Mobileum emailed Kibott concerning a schedule of four additional invoices it intended to issue for services that Mobileum would render pursuant to Amendment No. 3 to the Second Statement of Work.  Again, the

email indicated that the invoices were for a ███████████ ████████████ and covered milestones between October 2022 and December 2022.  The email described when the invoices would be due and the amount due for each.  On May 26, 2022, Dellis responded that the amounts and payment dates of the schedule were "confirmed."   Those invoices totaled €6,500,000.

48.    The following chart reflects all un-credited invoices issued by Mobileum to Kibott and their respective due dates (even if extensions were granted in certain instances), as memorialized in the Framework Services Agreement and each authoritative Statement of Work:

| Invoice Date | Invoice Description | Due Date | Invoice Amount (€) | Source |
|---|---|---|---|---|
| | | *Past Due* | | |
| 09/21/2021 | MS-Monthly Usage fee August & September 2021 | 11/20/2021 | 8,000.00 | First SOW |
| 09/23/2021 | MS-Monthly Usage fee September 2021 | 01/23/2023 | 200,000.00 | Second SOW |
| 10/31/2021 | MS-Monthly Usage fee October 2021 | 12/30/2021 | 4,000.00 | First SOW |
| 11/30/2021 | MS-Monthly Usage fee November 2021 | 01/29/2022 | 4,000.00 | First SOW |
| 12/22/2021 | MS-Monthly Usage fee December 2021 | 02/20/2022 | 4,000.00 | First SOW |
| 12/23/2021 | Monthly Usage fee January 2022 | 05/23/2022 | 25,000.00 | Second SOW |
| 12/23/2021 | Monthly Usage fee February 2022 | 04/22/2022 | 25,000.00 | Second SOW |
| 12/23/2021 | Monthly Usage fee March 2022 | 03/22/2022 | 50,000.00 | Second SOW |
| 12/23/2021 | Monthly Usage fee April 2022 | 06/21/2022 | 100,000.00 | Second SOW |
| 12/23/2021 | Monthly Usage fee May 2022 | 07/21/2022 | 100,000.00 | Second SOW |
| 12/23/2021 | Monthly Usage fee June 2022 | 08/20/2022 | 500,000.00 | Second SOW |
| 12/23/2021 | Monthly Usage fee July 2022 | 09/19/2022 | 1,000,000.00 | Second SOW |
| 01/17/2022 | MS-Monthly Usage fee January 2022 | 03/18/2022 | 10,000.00 | First SOW |
| 02/16/2022 | MS-Monthly Usage fee February 2022 | 04/17/2022 | 10,000.00 | First SOW |
| 02/17/2022 | Monthly Usage fee August 2022 | 10/15/2022 | 1,000,000.00 | Second SOW |
| 03/14/2022 | Monthly Usage fee September 2022 | 11/09/2022 | 1,000,000.00 | Second SOW |
| 03/21/2022 | MS-Monthly Usage fee March 2022 | 05/20/2022 | 10,000.00 | First SOW |
| 04/29/2022 | MS-Monthly Usage fee April 2022 | 06/28/2022 | 60,000.00 | First SOW |
| 05/13/2022 | MS-Monthly Usage fee May 2022 | 07/12/2022 | 150,000.00 | First SOW |
| 06/13/2022 | MS-Monthly Usage fee June 2022 | 08/12/2022 | 200,000.00 | First SOW |
| 06/24/2022 | Monthly Usage fee October 2022 | 12/21/2022 | 750,000.00 | Second SOW |
| 06/24/2022 | Monthly Usage fee October 2022 | 12/21/2022 | 1,250,000.00 | Second SOW |

| Invoice Date | Invoice Description | Due Date | Invoice Amount (€) | Source |
|---|---|---|---|---|
| 07/28/2022 | MS-Monthly Usage fee July 2022 | 09/26/2022 | **200,000.00** | First SOW |
| Total Past Due: | | | 6,660,000 | |
| *Not Past Due* | | | | |
| 06/24/2022 | Monthly Usage fee November 2022 | 05/20/2023 | 3,000,000.00 | Second SOW |
| 06/24/2022 | Monthly Usage fee December 2022 | 07/19/2023 | 1,500,000.00 | Second SOW |
| Total Not Past Due: | | | 4,500,000 | |
| **Total Amount Invoiced:** | | | **11,160,000.00** | |

49.     To date, Kibott has not challenged any of Mobileum's invoices as improper, either through the procedures defined in Section 9.1 of the Framework Service Agreement or otherwise.

## IV.     KIBOTT BREACHES THE AGREEMENTS AND ITS ASSURANCES OF PAYMENT

50.     Kibott failed to make a single timely payment to Mobileum as defined by the Agreements.

51.     To date, Kibott has only paid Mobileum the amounts stated in six invoices:

(i)     On January 21, 2022, Kibott paid Mobileum €8,000 for the invoice dated September 21, 2021, despite payment being due on November 20, 2021.

(ii)     On March 31, 2022, Kibott paid Mobileum €4,000 for the invoice dated October 31, 2021, despite payment being due on December 30, 2021.

(iii)     On March 31, 2022, Kibott paid Mobileum €4,000 for the invoice dated November 30, 2021, despite payment being due on January 20, 2022.

(iv)     On March 31, 2022, Kibott paid Mobileum €4,000 for the invoice dated December 22, 2021, despite payment being due on February 20, 2022.

(v)     On March 31, 2022, Kibott paid Mobileum €10,000 for the invoice dated January 17, 2022, despite payment being due on March 18, 2022.

(vi)     On May 6, 2022, Kibott paid Mobileum €10,000 for the invoice dated February 16, 2022, despite payment being due on April 17, 2022.

52.     Due to growing concerns over Kibott's consistent failure to meet its payment obligations, Mobileum asked Kibott when it would pay the outstanding invoices.  As of September 2022, Kibott was delinquent on payments worth €4,600,000.

53.     In September 2022, McNamara sent Mobileum a payment plan for Kibott's payment of the outstanding invoices and future invoices (the "Revised Payment Plan").   The Revised Payment Plan indicated that Kibott would pay Mobileum all €4,600,000 then outstanding by October 25, 2022 and provided dates by which Kibott would pay all upcoming invoices.   McNamara also sent Mobileum a letter he described as "Proof of [Mobileum's] Funds."   The letter, which purports to be from German auditing company KUGK Treuhand GmbH Wirtschaftsprüfungsgesellschaft ("KUGK") and is addressed to Dellis, states that "Kibott Sarl was able to cover all necessary costs to run its business in the past" and represents that KUGK "can basically confirm that the funds to cover the costs associated with future major projects are available."

54.     On October 25, 2022 and thereafter, Kibott did not make any payments to Mobileum.

55.     Since October 25, 2022, an additional €2,060,000 has become due under the Agreements.

56.     Upon information and belief, Kibott has continued and continues to use Mobileum's intellectual property and confidential information in potential breach of the Framework Services Agreement's provisions on intellectual property rights and confidential information.   "Confidential Information" should only be used in compliance with the Agreements.   Given Kibott's failure to meet its payment obligations under Agreements, Kibott is no longer entitled to Mobileum's intellectual property and confidential information.

57.     Before and throughout the duration of Kibott and Mobileum's contractual relationship, Kibott, through Funke and Dellis, and McNamara represented that Kibott was financially sound, representing that it had tens of millions of euros in investments by third parties available for the work Mobileum was providing.   Given these assurances, Kibott's explicit approval of each invoice, and Kibott's failure to challenge the invoices or goods or services provided as insufficient or otherwise improper, Mobileum continued to provide the goods and services contemplated by the Agreements.

## V.     THE LUXEMBOURG BANKRUPTCY PROCEEDING

58.     On November 1, 2022, Mobileum's counsel, Kirkland & Ellis LLP, sent Kibott a letter notifying it of its breach of the Agreements.   The letter stated that Mobileum would pursue all available remedies under the Agreements and applicable law if Kibott did not cure its breach immediately.

59.     On November 30, 2022, Kibott's counsel responded to Mobileum's letter, alleging that Mobileum had not performed under the Agreements in the "quality that Kibott was reasonably expecting from Mobileum" and that Mobileum's invoices were "unreasonable compared to Mobileum's [allegedly] unsatisfactory contract performance."  Kibott's letter was the first time Kibott expressed any concern with ████████████████████ or related services that Mobileum had provided to Kibott.

60.     Presuming that Kibott lacked sufficient assets and cash to satisfy its debt, Mobileum, through Luxembourg counsel, filed a bankruptcy petition against Kibott in the District Court of Luxembourg on December 2, 2022 (the "Bankruptcy Petition").  The Bankruptcy Petition sought to put Kibott into bankruptcy (*faillite*) pursuant to the Luxembourg Commercial Code, based on the failure to make the payments owed to Mobileum under the Agreements and generally alleged the same facts as stated herein.

61.     Mobileum did not hear from Kibott again until January 12, 2023, one day before a scheduled hearing in Luxembourg on the Bankruptcy Petition.  In a letter signed by Dellis and addressed to Mobileum, Kibott challenged the quality of services and goods provided by Mobileum and explained that Kibott would "invoke[] the right of suspension of its contractual obligations . . . [and] not settle any undue amounts."

62.     On January 23, 2023, the District Court of Luxembourg issued a written judgment (the "Judgment") dismissing the Bankruptcy Petition on jurisdictional grounds, ruling that any dispute arising under the Framework Services Agreement must be brought before the courts of Alameda County in the State of California and that the Luxembourg Courts could therefore not determine whether the amounts claimed by Mobileum are indeed owed by Kibott.  Mobileum, through Luxembourg counsel, filed an appeal against the Judgment on 10 February 2023.

*     *     *

63.     Mobileum now brings this action to seek relief from Kibott and its principal's misconduct and failure to pay €11,120,000 of invoices for goods and services provided by Mobileum and accepted by Kibott.

## FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT)

### (AGAINST KIBOTT)

64.     Mobileum adopts and incorporates the allegations contained in Paragraphs 1 through 63 of its Complaint as if set forth fully herein.

65.     The Agreements by and between Mobileum and Kibott are legally binding and enforceable contracts.  Each contract is signed by Mobileum and Kibott and each contemplates Mobileum's provision of software and related services in consideration for Kibott's payment.

66.     Mobileum has fully performed and met its obligations under the Agreements by ███████ ████████████████████████████████████████

67.     Kibott breached Section 9.6 of the Framework Services Agreement by ████████████ ████████████████████.

68.     Kibott breached Sections 10 and 12 of the Framework Services Agreement by ██████ ████████████████████████████████████████████████████████ ███████████████.

69.     Kibott repudiated the Agreements by no later than January 12, 2023, when it wrote to Mobileum that it would "invoke[] the right of suspension of its contractual obligations . . . [and] not settle any undue amounts."

70.     As a direct result of Kibott's breach, Mobileum suffered at least €11,120,000 in monetary damages plus interest as provided by the Framework Services Agreement.  (Ex. A, Sec. 9.7.)

## SECOND CAUSE OF ACTION

### (FRAUDULENT INDUCEMENT)

### (AGAINST ALL DEFENDANTS)

71.     Mobileum adopts and incorporates the allegations contained in Paragraphs 1 through 70 of its Complaint as if set forth fully herein.

72.     In negotiating the Framework Services Agreement, Defendants and McNamara represented that Kibott was financially capable of meeting its obligations under the contemplated agreements.   Defendants Funke and Dellis made these statements to Mobileum employees

Bobby Srinvasan, Andrew Warner, and Renato Filipe Gasper both orally and telephonically during the in-person and virtual meetings leading to the execution of the Framework Services Agreement.

73.     Moreover, in order to persuade Mobileum to continue to ███████████████ █████████████████████████████████, McNamara emailed Bobby Srinvasan, Andrew Warner, and Renato Filipe Gasper of Mobileum a letter entitled "Proof of funds" on September 30, 2022. The letter, which purports to be from German auditing company KUGK Treuhand GmbH Wirtschaftsprüfungsgesellschaft ("KUGK") and is addressed to Dellis, states that "Kibott Sarl was able to cover all necessary costs to run its business in the past" and represents that KUGK "can basically confirm that the funds to cover the costs associated with future major projects are available." Upon information and belief, KUGK prepared this document at Kibott's request and on Kibott's behalf, which Kibott then sent to McNamara to transmit to Mobileum.

74.     Defendants knew these statements were false or were made with reckless disregard for their truth in order to induce Mobileum to provide Kibott with services.

75.     Defendants knew and intended Mobileum to reasonably rely on their statements to enter into the Agreements with Kibott and provide, and continue to provide, goods and services to Kibott as described in the Agreements.

76.     Mobileum reasonably relied on Defendants' statements and therefore executed the Framework Services Agreement with Kibott, █████████████████████████████████ ████████████████████████████████████████████████

77.     Mobileum's reliance upon Defendants' misrepresentations was reasonable.

78.     As a direct and proximate cause of Defendants' misrepresentations, Mobileum provided services to Kibott valued at least €11,160,000. The exact amount of these damages, including but not limited to principal and interest, will be proven at the time of trial.

79.     Mobileum is entitled to reasonable attorney fees and costs related thereto in pursuing its claims against Kibott.

80.     In committing the acts herein mentioned, Defendants acted with oppression, fraud, or malice, and, accordingly, Mobileum is entitled to exemplary damages in an amount to be determined at the time of trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff a jury trial on all issues so triable and grant judgment against Defendants as follows:

a.  That Defendants be ordered to pay to Mobileum compensatory damages in excess of €11,160,000, the exact amount of which will be proven at the time of trial;

b.  That Defendants be ordered to pay to Mobileum pre-judgment and post-judgment interest as permitted by law and or the Agreements;

c.  That Mobileum be awarded exemplary damages, as permitted under California law, as a result of Defendants' oppressive, fraudulent, and malicious misconduct in a sum in excess of the compensatory damages to be awarded;

d.  That Mobileum be awarded the attorney's fees and court costs that it incurred in the prosecution of this Complaint;

e.  That Defendant Kibott be enjoined from continuing to use Mobileum's intellectual property; and

f.  Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rules of Civil Procedure 38, Mobileum hereby demands a trial by jury. Respectfully submitted this 24 day of March 2023.

1    DATED:  March 24, 2023                    Respectfully submitted,
                                               KIRKLAND & ELLIS LLP
2

3                                              _/s/ Christopher W. Keegan_____
                                               KIRKLAND & ELLIS
4                                              CHRISTOPHER W. KEEGAN (SB#232045)
                                               christopher.keegan@kirkland.com
5                                              STEPHEN M. SILVA (SB#335865)
                                               stephen.silva@kirkland.com
6                                              555 California Street
                                               San Francisco, CA 94104
7                                              United States
                                               Telephone: +1 415 439 1400
8                                              Facsimile: +1 415 439 1500

9                                              KIRKLAND & ELLIS LLP
                                               AARON H. MARKS (*Pro Hac Vice Forthcoming*)
10                                             Aaron.marks@kirkland.com
                                               AMAL EL BAKHAR (*Pro Hac Vice Forthcoming*)
11                                             Amal.elbakhar@kirkland.com
                                               601 Lexington Avenue
12                                             New York, NY 10022
                                               United States
13                                             Telephone: +1 212 446 4800
                                               Facsimile: +1 212 446 4900
14

15                                             Attorneys for Plaintiff Mobileum Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28